Welcome back for round two this week. Thank you. Good morning, Your Honors. Jesse Agatstein, round two, Federal Defenders of San Diego, on behalf of Ms. Rabon. So there were a number of issues during Ms. Rabon's sentencing. This Court can only address one, which is when the District Court announced the original underlying guideline range, it got it wrong. So for that issue alone, this Court can remand for resentencing, even if it assumes plain error review applies. So I'll start with what the District Court said after Ms. Rabon's counsel objected to the sentence. It said, quote, so the 24 months that I've imposed is an extraordinary variance from the low end of 57 months. That's at ER 26. The problem was that when the District Court had actually calculated the guidelines step by step the year before, it had come to a 20-month lower low end of 37 months. And that error alone meets all four prongs of the plain error review standard. I'll point this Court to its case, Vargum. That's a case where the District Court started with a low end of 70 months and then varied down to a sentence of 30 months. On plain error review, this Court found the guidelines, the low end should have actually been 57 months. Even though the Court ultimately had imposed a sentence that was below both the incorrect and the correct guidelines, this Court still reversed for plain error because starting with the lower guideline range set the incorrect framework. And had it started with the lower range, there's a chance the Court could have varied further down. That's consistent with the Supreme Court's later cases, Molina-Martinez and Rosales-Morales. I'm also happy to briefly address Olobongi. I'll start by saying Olobongi status really doesn't affect the outcome of this case, so this Court doesn't need to touch it if it doesn't want to. Putting it aside, the District Court was still allowed to consider the underlying guidelines. That's under this Court's previous case, Plunkett. So, that, which is where we are now. The problem is when you consider those underlying guidelines, you have to get them right. That said, I don't think Olobongi is clearly irreconcilable with Booker. Booker obviously cites Olobongi, so that's a tough one. Finally, the last error is the Court never calculated or announced the underlying Chapter 7, three to nine month range. This Court's case, Hammonds, holds on plain error review, that a failure to calculate the guideline range clearly satisfies the first two prongs of plain error. On that one, I mean, we don't need the District Court to spell out every little step. I mean, here I think we can infer District Court thought the three to nine month was just too lenient given the fact that District Court is very lenient the first time, right? So, it is an error to fail to announce the three to nine month range. That's what Hammonds says, and it controls this case. That was also a revocation sentencing. Didn't Hammonds also say we need to look at the full record and we can infer things? So, Hammonds reversed for a failure to calculate the guideline range. There they couldn't tell. I think there was that we couldn't tell what the District Court was thinking, whether this Court even actually calculated. Here, I mean, it seems like we can infer what happened here. I mean, that, you know, she was transporting drugs with her child. You know, the sentencing guideline range is whatever, 37 to 46 months, and he's very lenient. He just gives probation, and then within months, another drug violation. And so, he, I think, goes to the original sentence and not for the, you know, punishment for violating. I mean, it seems like we can kind of figure out what happened here. Whereas Hammond, it wasn't clear what the District Court was doing here. I mean, it seems, at least on that point, it's kind of clear what the District Court is trying to do here. I don't think it's clear what the District Court was trying to do in relation to the guidelines. The District Court did explain some of this 3553A analysis, absolutely. But whether the District Court was considering the 3 to 9 and then saying, actually, I want to almost triple the high end of that, whether the District Court was saying, actually, I want to look at the underlying and vary down, whether it was considering both of those, or... Whether it's following the probation officer's comment about how much time of the home confinement she had yet to serve and convert that to an incarceration term. I mean, there are lots of alternatives. What's, for me, strange about this case is that he could go to either range, and they're like goalposts, and he goes between them. And it's not hard to understand the logic behind why the District Court did what it did, particularly if we're talking a plain air standard. I almost have to ask, does your client really want the possibility of being sentenced and have the District Court say, well, then, we got vindictive and so forth, but, well, then, she really didn't serve what she was supposed to serve, so I'm not going to treat this like probation. I'm going to treat this and go back to the original offense, for which the range is way over here, and is she potentially at risk of getting a heavier sentence? I mean, how uncertain are we as to what the District Court did and how probable it is that we'd get a different result on remand? So the errors were failure to announce the 3-9 and then announcing an incorrectly high underlying offense. So my client's not concerned about being resentenced under a 20-month lower underlying offense range. I think, so we have a number of plain errors, and then the Supreme Court says in Melina Martinez that there's no need to show prejudice under the plain error standard beyond the fact that the erroneous and higher guidelines range set the wrong framework. So if Judge Clifton, I take your point, it's possible that the sentencing judge was sort of using these two guidelines as goalposts and coming to the middle. The problem is he used an incorrectly high goalpost. So there's a- Well, but what would the correct goalpost, the one that he calculated at the first sentencing hearing, and I've got too many numbers here, so I'm not finding it, but it wouldn't have been dramatically beneficial to your client. Yes, it would have been 20 months lower, so nearly two years. In the transcript here, it's 1 ER 26. The judge says, quote, you know, he's after you, he's imposed 24 months, he says, quote, so the 24 months that have been imposed is an extraordinary variance from the low end of 57 months. I understand you got that wrong. So it seems like he is saying, I'm imposing 24 months pursuant to his mistaken calculation of the guidelines. So it seems like he already rejected the three to nine months, so he's going back to the original sentence. But I mean, your point still stands about, you know, 36 versus 57 months. Yeah, and I do think it would have been helpful for the district court to explain what it was doing in relation to the probation revocation guidelines, saying, you know what, I don't think those are relevant at all. But regardless, because of the wrong 57 months, that's a little. But if the right range was at 37 to 46, again, I'm not sure. And what sentence did he impose? 24 months. So it's still well below what you tell us is the correctly calculated range. That's correct. So he's splitting the uprights. Do we have any real reason to believe it would be different? Yes. It had, so this court explained in Fargam that when the court starts from an incorrectly high guideline and then varies down a bunch, even if the sentence he chose is lower than the correct guideline, it's possible it could have varied even a month lower. And that's enough on plain error, particularly given that Ms. Rabin is, I think, about five months away from serving the complete 24-month sentence and that she's done very well in  It is possible here that the court could have imposed one month shorter. Unless the court has further questions, I'll reserve the remainder of my time. Thank you. Good morning, Your Honors, and may it please the court. Andrew Chang for the United States. The government has a different interpretation of the record. And let me try to persuade the court why the court, the district judge below, did not commit plain error. The record of this case shows that what the judge did was it considered the lower replication range of three to nine months, varied up to a 24-month sentence, and then explained why that 24-month sentence was proper. Now I will be the first to admit that the record is not a model of clarity, and there are some ways it's not clear, but I think it is very clear in the most important respect, which is that the judge was varying up from a lower range and not varying down from a higher range. And the reason I say that is this. If you just look at what the judge said to Ms. Rabin as he was imposing sentence. He said, you know, I'm very disappointed to see you back again, and that's an understatement. You've squandered this extraordinary opportunity I've given you. The things you told me before were not true. And also, it's now, you know, time for me to punish you. And he said one more thing that I think is important, and that's in ER 21. And what he said was, I'm not going to give you the benefit that I gave you before. And the benefit that he gave her before was a lenient, below-guideline sentence. And what he's telling Ms. Rabin is, I'm not going to give you another lenient, below-guideline sentence. And that only makes sense if the judge was going up from a lower range. But then we've got the problem of he never actually articulated what the lower range was, did he? It's referenced, arguably, in the report that's in the record, but did he ever say three to nine months? He never said that, Your Honor, but. Not the problem. Things have evolved since we got hit with this. When Booker came along and made the guidelines advisory, not mandatory, Justice Breyer, wanting to save as much of his work in the sentencing reform effort as he could, helped lead the court to a regime whereby you've got to calculate the guidelines, announce them, and start from there. And that, perhaps, the edge is a little off that with the passage of time, but that was clearly stated in several Supreme Court cases. And so if we apply those standards, which concededly are on original sentencing, not on a probation violation, we never have that articulation by the district court or even articulated adoption of what the range that applies to the revocation of probation is, which we all agree is three to nine months. I will agree, Your Honor, that the district judge did not explicitly say three to nine months, but I think you can look at the record, and as Judge Lee indicated, infer that that's what he did. This court in McBell has recognized that if a judge looks at the probation report, it can be presumed that he considered the guidelines in that probation report. And I think the record really supports that that's what he did in this case. But here, I mean, I can't get away from what he said here in 1 ER 26 when he says, so the 24 months that have imposed is an extraordinary variance from the low end of 57 months, which he thought was the earlier sentence. To me, it clearly seems like he decided he's going to go back to the original sentence, which wasn't accurate. And, you know, true, he didn't say three to nine months, but I mean, you know, I think part of the problem sometimes, this judge here, he was a career prosecutor for like 30 years before going on the bench. So if you've done things so many times, sometimes you make the mistake of not, you know, spelling everything out. I think that's what he did. But it's clearly, to me, he's going back to the original sentence. Now, then the issue comes to, it wasn't 57 months, it's 37, and it seems like the probation officer led him astray because I think she says 57 months, 57 to 71. Sure 24 is lower than 57 and 37, but I mean, how do we know? Maybe he was lenient before, maybe he'll go below 24. I mean, shouldn't we remand that? Well let me... And it's assuming that it's, you know, he's starting from the 57 to 71 month. I want to go off the sort of assumption that you are saying, but if I could just push back one more time and just, you know, I want to urge the court to try to not divorce what he said from the context of the overall sentencing. If the court can accept the government's premise that he initially started at the lower range and then went up, when he mentioned that higher range, he was responding to an objection that was made by the defendant about substantive reasonableness. And I think what he was really saying was, look, my sentence is substantively reasonable because it's lower. It's lower than the original guideline range. And yes, he used the word variance and he used the word departure, but I think you can interpret that as more of a rhetorical flourish in what he was saying. He was saying, the point that he was trying to make was, my sentence is reasonable because it's lower than the original guideline range. And I think if you look at it through that lens, then it doesn't really matter if he used the right guideline range or the wrong guideline range, because his overall point was that it's just lower. And that would have been the same regardless of whether the correct or incorrect guideline was used. Let's just assume, I take your point, assuming that he relied on the original sentence. I mean, shouldn't we remand it? It could make a difference, 57 months low end versus 37 months. I don't think it would make a difference, Your Honor. First, I don't think it's plain error because I think there's competing interpretations of what happened. Is the interpretation that he was going off of a higher guideline range, was that obvious that was happening? I don't think it was. But assume. I'm sorry. He says twice on the page that Judge Lee has cited you to, but it looks like he was misled by Officer Pearson, because on 1 ER 19, she says, she's looking at the time of sentencing. I believe it was 57 to 71 months, and the court takes it all in the mitigating factors at the time of sentencing and gives her a probation case. So we've got the officer who's miscited to the court, and the court looks like it's just got it fixed in his head and took it from there. The probation officer did state that, but I really don't think that the district judge had sort of the original guidelines in mind when he was imposing the sentence. Because if you look at what he was saying, he struggled to remember what those guidelines were. He asked counsel to correct him if he was misremembering. No one corrected him. He's done lots of cases since the first time this was in front of him. It's very easy to understand his uncertainty and how he could have been easily misled by the comment of the probation officer. But in this murky area, the problem is, well, you know, how do we, do we say good enough for government work, or do we say no under the regime that the Supreme Court established for the voluntary or advisory guidelines, that we really need to have the district court say it? And how does it differ? And this is the part that I've really struggled with, and I'll be appreciative of guidance from both of you. This is not the same as original sentencing. The rules aren't quite the same for revocation. And should that make a difference here on what we require the district court to articulate as part of the sentencing process? Let me respond to your question, Judge Clifton, and then let me get to, I think, where the court is trying to take me, which is, is this really prejudicial? You know, I think it is different in a probation revocation context. It's a much more streamlined process. And there really aren't that many calculations that are involved in a probation revocation. And so I think, you know, if a judge is relying on a probation report that accurately sets forth the revocation range, everyone is relying on it, no one disputes it, I don't think it's plain error in that context. And it's a different sort of regime from when you're doing a routine sentencing. When there's a lot of calculations that are involved, I think you want the judge to be able to mechanically follow the calculation. But it's just a different regime when you're doing probation revocation. But I really want to get to, I think, Judge Lee's question, which is, you know, is this prejudicial? And I don't think that it was. The defendant would still have to show a reasonable probability that if the judge was thinking about the correct guideline, that she would have received a lower sentence, and I don't think that she can show that. It was, the 24-month sentence was still well below both the correct and incorrect range of the original guideline range. And there was nothing that the judge said that indicated that it was tethered, his sentence was tethered to the guideline range at all. I mean, he said that it was tethered to the need to punish her, her numerous revocations of probation, or violations of probation, the things that he told her, that she told him were not true. He also characterized it as woefully inadequate. And so I think just common sense would indicate that if a judge is thinking about applying a guideline, he's not going to call it woefully inadequate. So I just don't think that that higher range was really doing all that much work in the  And I want to, very quickly, I know I'm out of time, but if I could just really get out, you know, why the court, if it does find prejudicial error, why it should not, why it should not correct it under prong four of plain error review. This is a defendant that had received, you know, break after break from the judge, the prosecutor involved, the probation officer, and, you know, if the judge had just imposed custodial time at the very beginning, at the original sentencing, the defendant wouldn't have been able to appeal because there would have been an appellate waiver. But she violated probation, and then there are some technical violations, technical allegations of how the judge may have erred. But the judge asked, you know, a defense counsel, you know, am I misremembering, have I done anything wrong? And counsel said nothing. So I just don't think that this is a case that would promote or increase the public reputation of sentencing if the court exercises discretion to correct it. Great, thank you. Thank you. So Judge Clifton, I'll start with the part of the case you're struggling with about the unusual role that revocations play in this overall scheme. So this court in Hammonds addressed this exact point, and that was a supervised release revocation case under this very same guideline policy statement as issued here. And it said there were two plain errors there. The first was the district court did not calculate the guideline range. And the second was that it looked like the court had relied on the wrong criminal history. And then this court said that, quote, both of these errors clearly satisfy the first two prongs of the plain error analysis. That's at 1-105 of that case. And that's consistent with what this court clarified in Cardi on Bonk, which came after McVell, which said, quote, all sentencing proceedings are to begin by determining the applicable guideline range. That's, you know, all. And that was interpreting 3553C, which applies to all sentencing, both revocation and underlying. On I'll say the fundamental problem with the government's argument that the court was varying up is that the only thing the court said was that it was imposing, quote, an extraordinary variance from the low end of 57 months that it was varying down. So on this record, this court should remand for the district court to clarify. All right. Thank you. Thank you both for the helpful argument. The case has been submitted, and we are in recess for the day. All rise. This court for this session stands adjourned.
judges: CLIFTON, BYBEE, LEE